No. 19-20023

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

MICHAEL J. HEWITT,
                Plaintiff-Appellant,

v.

HELIX ENERGY SOLUTIONS GROUP, INCORPORATED;
HELIX WELL OPS, INCORPORATED,
                Defendants-Appellees

Appeal From the United States District Court for the Southern District of Texas, Houston Division, Civil Action No. 4:17-CV-2545

**PETITION FOR REHEARING EN BANC OF APPELLEES HELIX ENERGY SOLUTIONS GROUP, INC. AND HELIX WELL OPS INC.**

NORTON ROSE FULBRIGHT US LLP
M. Carter Crow
Texas Bar No. 05156500
carter.crow@nortonrosefulbright.com
Katherine D. Mackillop
Texas Bar No. 10288450
katherine.mackillop@nortonrosefulbright.com
Kimberly F. Cheeseman
Texas Bar No. 24082809
kimberly.cheeseman@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:   (713) 651-5246

Counsel for Defendants-Appellees

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Michael J. Hewitt, Plaintiff-Appellant;

2. Edwin Sullivan, Counsel for Plaintiff-Appellant;

3. Mark Oberti, Counsel for Plaintiff-Appellant;

4. Oberti Sullivan LLP, Counsel for Plaintiff-Appellant;

5. Helix Well Ops Inc., Defendant-Appellee;

6. Helix Energy Solutions Group, Inc., Defendant-Appellee;

7. M. Carter Crow, Counsel for Defendants-Appellees;

8. Kimberly Cheeseman, Counsel for Defendants-Appellees;

9. Katherine D. Mackillop, Counsel for Defendants-Appellees;

10. Norton Rose Fulbright US LLP, Counsel for Defendants-Appellees.

    /s/ M. Carter Crow

Attorney of Record for Helix Well Ops Inc.
and Helix Energy Solutions Group, Inc.

# GROUNDS FOR REHEARING EN BANC

Appellees Helix Well Ops Inc. and Helix Energy Solutions Group, Inc. ("Helix") seek vacatur of the Panel's opinion because it irreconcilably conflicts with opinions from the First, Second and Sixth Circuits on an important issue of the interpretation of a Fair Labor Standards Act ("FLSA") overtime exemption. These opinions all examined whether a non-traditional compensation scheme satisfied the "salary basis" test under the highly compensated employee exemption of the FLSA. This exemption applies to employees who are paid over $100,000 annually and removes the requirement for overtime compensation.

Appellant Hewitt was paid on a day rate above $963 and earned more than $200,000 annually. In assessing whether Hewitt qualified under the highly compensated employee exemption, the Panel held that the "salary basis" test requires an employee to know the amount of his weekly compensation *before* he works that week, and the weekly compensation must always be the same amount. Because Hewitt's total weekly compensation was contingent on the number of days that he worked, the Panel held that his "day rate" did not constitute a salary.

In reaching this decision, the Panel focused on the total amount paid weekly, not whether there was a predetermined amount that constituted "all or part of" Hewitt's compensation for any week he worked—the opposite of how the First, Second and Sixth Circuits approached the question. Unlike the Panel here, the other

three Circuits consistently focused on whether a predetermined amount above the required minimum $455 weekly pay was paid, and this amount was all or part of the employee's total weekly compensation. *Anani v. CVS RX Services, Inc.*, 730 F.3d 146, 148 (2d Cir. 2013); *Litz v. Saint Consulting Group*, 772 F.3d 1, 4-5 (1st Cir. 2014); *Hughes v. Gulf Interstate Field Services, Inc.*, 878 F.3d 183, 189-90 (6th Cir. 2017). The Panel's opinion ignored the regulatory language allowing only a portion of a salary to be predetermined, instead requiring that all of the salary must be equal and paid in exact increments each pay period. *Hewitt v. Helix*, 956 F.3d 341, 343-44 (5th Cir. 2020). Further, the Panel's opinion concludes that the reasonable relationship test in 29 C.F.R §541.604 applies to the highly compensated employee exemption. This conclusion was rejected by *Anani* and *Litz*.

Additionally, the Panel's opinion conflicts with another Fifth Circuit Panel opinion (since withdrawn) on the same issue. *Faludi v. U.S. Shale, LLC*, 950 F.3d 269 (5th Cir. 2020). The original *Faludi* opinion held that a day rate compensation qualified as a salary, since the plaintiff regularly received a predetermined amount (a $1,000 day rate) that exceeded the $455 minimum weekly amount. *See* 936 F.3d 215, 219-221 (5th Cir. 2019). The original *Faludi* opinion rejected the arguments that (i) compensation must be *calculated* on a weekly basis, and (ii) a reasonable relationship must exist for highly compensated employees between the day rate and the total weekly compensation. *Id.* That opinion was later withdrawn, finding that

iii

the FLSA did not apply. 950 F.3d at 275. The new opinion, however, expressly confirmed that its prior holding was correct. *Id.*

Finally, the Panel's opinion effectively renders moot the highly compensated employee exemption, which will now apply only if an employee makes precisely the same amount of money each week, known and calculable beforehand, even if he earns well above $100,000. Consideration by the full Court is necessary to secure and maintain uniformity with other Circuit Court decisions on this exceptionally important employment law issue. Otherwise, employers operating in the First, Second and Sixth Circuits must abide by different rules than those operating in the Fifth Circuit, and would require national employers to apply inconsistent rules.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES ........................................................i

GROUNDS FOR REHEARING EN BANC ......................................................... ii

TABLE OF AUTHORITIES ........................................................................vi

ISSUE PRESENTED ...................................................................................1

STATEMENT OF COURSE OF PROCEEDINGS .................................................2

STATEMENT OF FACTS .............................................................................2

    I.    Hewitt Was a Highly Compensated Employee Paid on a Salary Basis ..................................................................................2

    II.    The District Court Granted Judgment for Helix; The Panel Reversed ..................................................................................3

ARGUMENT ............................................................................................3

    I.    Under the Reasoning of Three Other Circuit Courts, Hewitt Was Paid on a Salary Basis and Thus Exempt From Overtime Pay Under the Highly Compensated Employee Exemption ...............3

        A.    The Highly Compensated Employee Exemption Relaxes the Requirements for Payments on a Salary Basis ...................5

        B.    The Panel Misses Key Language in the "Salary Basis" Test, Creating a Conflict With Three Other Circuits................6

        C.    The Panel's Decision Also Conflicts With the First and Second Circuits on the Application of the "Reasonable Relationship" Test...................................................12

    II.    The Panel's Decision Recognizes That it Is Contrary to a Now Withdrawn Fifth Circuit Decision....................................14

CONCLUSION........................................................................................14

CERTIFICATE OF SERVICE ....................................................................15

CERTIFICATE OF COMPLIANCE..............................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anani v. CVS RX Servs., Inc.*,
  730 F.3d 146 (2nd Cir. 2013) ....................................................................*passim*

*Fauldi v. U.S. Shale Solutions*,
  936 F.3d 214 (5th 2019), *withdrawn by* 950 F.3d 269 (5th Cir.
  2020) ........................................................................................ iii, iv, 14

*Hewitt v. Helix*,
  956 F.3d 341 (5th Cir. 2020) ..................................................................*passim*

*Hughes v. Gulf Interstate Field Servs.*,
  878 F.3d 183 (6th Cir. 2017) ............................................................ iii, 7, 8, 11

*Litz v. Saint Consulting Group, Inc.*,
  772 F.3d 1 (1st Cir. 2014)........................................................ iii, 6, 7, 8, 11, 13

*York v. City of Witchita Falls*,
  944 F.2d 236 (5th Cir. 1991) ...............................................................................9

**Other Authorities**

29 C.F.R. § 541.600 ............................................................................................6

29 C.F.R. § 541.601 ............................................................................................6

29 C.F.R. § 541.602(a).............................................................................6, 7, 9, 12

29 C.F.R. § 541.602(a)(1)..................................................................................12

29 C.F.R. § 541.602(b)(1)....................................................................................5

29 C.F.R. § 541.602(b)(2)....................................................................................5

29 C.F.R. § 541.604 ............................................................................................ ii

29 C.F.R. § 541.604(a).........................................................................................9

29 C.F.R. § 541.604(b) ...................................................................................9, 12

vi

143 Cong. Rec. E317-04, E317-18, 1997 WL 79643................................................4

U.S. Department of Labor, Wage and Hour Division, "Defining and
   Delimiting the Exemptions for Executive, Administrative,
   Professional, Outside Sales and Computer Employees," 69 Federal
   Register 22172, April 23, 2004.......................................................................3, 4

**ISSUE PRESENTED**

Whether the Panel erroneously applied the salary basis test for the highly compensated employee exemption under the FLSA where the Panel's opinion conflicts with opinions from the First, Second and Sixth Circuits.

## STATEMENT OF COURSE OF PROCEEDINGS

Both parties filed summary judgment motions, and the trial court granted judgment for Helix. ROA.816-23. The Panel reversed, granting judgment for Hewitt. Ex. A.

## STATEMENT OF FACTS

### I. Hewitt Was a Highly Compensated Employee Paid on a Salary Basis

Helix operates specialized offshore well intervention vessels that provide for the maintenance of subsea oil wells. ROA.294; ROA.383; ROA.423; ROA.490. Helix made Hewitt a written offer of employment with a salary calculated daily, which Hewitt accepted in writing. ROA.415-16. Hewitt supervised a 14-member commercial crew and oversaw all day-to-day operations of the rig. ROA.204-05; ROA.408-09; ROA.398. Hewitt worked six offshore hitches of 28-days each year, working 12 hours a day, seven days a week. ROA.294, 297.

Because it was an important job, Hewitt was highly compensated. Helix paid Hewitt $248,053 in 2015, $218,863 in 2016, and $143,680 in the eight months he worked in 2017 (around $215,520 on an annual basis). ROA.499-501.

Helix's employee Self Service portal listed Hewitt's pay as "salary." ROA.420. Hewitt's pay stubs confirm that his "Base Salary" (without bonuses) was calculated using a daily pay rate of at least $963—that is, he made $963 for each day he worked. ROA.423. Thus, Hewitt always received at least $963 per week

regardless of the number of hours he worked each day or the number of days he worked each week.  ROA.668.

## II. The District Court Granted Judgment for Helix; The Panel Reversed

The district court concluded that Hewitt was an exempt employee and not owed overtime.  ROA.816-23.  The court found that Hewitt was paid on a salary basis and held that "[t]he regulation does not require that the plaintiff be guaranteed to work a prescribed number of days, but instead demands that the plaintiff be paid a predetermined amount, not to fall below $455 during any week in which he works." ROA.820-21.  The court confirmed that Hewitt met the requirements of the highly compensated employee exemption.  ROA.822-23.

The Panel held that Helix did not pay Hewitt on a salary basis.

## ARGUMENT

## I. Under the Reasoning of Three Other Circuit Courts, Hewitt Was Paid on a Salary Basis and Thus Exempt From Overtime Pay Under the Highly Compensated Employee Exemption

Although the FLSA was enacted in 1938, the highly compensated employee exemption was not added to the statute until 2004.  *See* U.S. Department of Labor, Wage and Hour Division, "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 69 Federal Register 22172, April 23, 2004.  Prior to this amendment, Congress had urged a change in the law to address highly compensated workers:

... [D]isgruntled employees have begun to use the FLSA's salary basis test as a tool for seeking revenge and not for logically distinguishing exempt from nonexempt employees ... .

...

... There is no reason that the FLSA, which was passed to protect laborers who 'toil in factory and on farm,' and who are 'helpless victims of their own bargaining weakness,' should ever be interpreted to protect workers making high five-figure or six-figure incomes. Yet, without considering the policy implications, courts are reaching such conclusions on an alarmingly frequent basis.

A worker drawing a large salary must perform some valuable services for an employer. Why, then, should that employer have to satisfy a complex set of artificial and archaic duties tests to prove that the employee is valuable? A worker drawing a large salary also must possess considerable bargaining leverage. Why then, should employers be forced, regardless of the employee's needs or preferences, to calculate paychecks only in the inflexible manner dictated by Government salary basis regulations?

The FLSA, in nearly six decades, has strayed from its laudable goal of protecting the poorest and weakest laborers from workplace abuses. The Department of Labor and the courts need to refocus their efforts.

See 143 Cong. Rec. E317-04, E317-18, 1997 WL 79643, 1.

The highly compensated employee exemption to the overtime pay rules has three requirements: (1) duties: the employee's duties include supervising employees, (2) annual compensation: the employee's annual compensation is at least $100,000, and (3) computation of pay: the employee is paid on a "salary basis" of at least $455 each week. The first two requirements are not contested; only the third is at issue. In other words, whether Hewitt, who earned over $200,000 annually, was paid on a salary basis.

The Panel's opinion creates a split with the First, Second and Sixth Circuit Courts on the "salary basis" requirement for highly compensated employees. Those courts reason that meeting the salary basis requirement turns on whether there was a predetermined amount of pay above $455 that constituted all or part of the employee's weekly compensation, and not on whether the identical amount of total compensation was paid weekly and known beforehand, as the Panel decided.

## A. The Highly Compensated Employee Exemption Relaxes the Requirements for Payments on a Salary Basis

The highly compensated employee exemption provides great flexibility to employers by providing numerous ways for them to meet the $100,000 threshold. For instance, the regulation allows the $100,000 annual compensation to include payments for commissions, bonuses, and other nondiscretionary payments. 29 C.F.R. §541.601(b)(1). Employers can also issue make-up payments at year-end to achieve the $100,000 threshold, and still qualify for the exemption. *Id.* §541.601(b)(2). These payment options demonstrate a focus on <u>whether</u> the $100,000 threshold has been met, rather than <u>how</u> it was met.

Reading section 541.601 as a whole, the Second Circuit concluded that the highly compensated employee exemption was intended to relax the requirements of paying on a salary basis:

> [Plaintiffs'] sole argument regarding C.F.R. § 541.601 is that it is intended only to provide a relaxed standard as to determining the duties requirements for employees who earn over $100,000. However, that

reading is unsustainable. First, the regulation is found in the "Salary Requirements" Subpart rather than in the "duties requirements" Subparts, and there is direct evidence that this placement was not the result of administrative inadvertence. … Therefore, the very structure and express language of C.F.R. § 541.601 indicate that its purpose was to relax the duties requirement in order to exempt employees from the time-and-a-half requirement **_because_** they earn over $100,000 annually.

*Anani*, 730 F.3d at 148 (emphasis added); *see also Litz*, 772 F.3d at 5 (explaining that plaintiff was attempting to "elevate[] form over substance").

> ### B. The Panel Misses Key Language in the "Salary Basis" Test, Creating a Conflict With Three Other Circuits

The Panel decided that Hewitt was not paid on a salary basis. *Hewitt*, 956 F.3d at 343. To qualify for the highly compensated employee exemption, an employee must be "compensated on a salary or fee basis at a rate of not less than $455 per week." 29 C.F.R. §§541.600, 541.601. Section 541.602 elaborates on what constitutes a "salary basis:"

An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee **_regularly receives_** each pay period on a weekly, or less frequent basis, a **_predetermined amount_** constituting **_all or part_** of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. §541.602(a) (emphasis added). Thus, the employee must "regularly "receive" a "predetermined amount" above $455 that constitutes "**_all or part_**" of the employee's compensation. In other words, an amount above $455 must be

determined in advance and must be paid each pay period, although additional compensation can be paid at the same time without violating the regulation.

The other circuits addressing this issue have consistently concluded, based in part on the relaxed requirements for highly compensated employees, that if the predetermined amount exceeds $455, then the salary basis test was met, regardless of whether the employee earned additional compensation above the predetermined amount. *See Anani*, 730 F.3d at 148; *Litz*, 772 F.3d at 5; *Hughes*, 878 F.3d at 189-190. These conclusions are consistent with the regulation's language, which requires the employee receive "a predetermined amount constituting **all or part** of the employee's compensation." 29 C.F.R. §541.602(a) (emphasis added).

In *Anani*, the Second Circuit focused on the fact that the company paid the employee a predetermined minimum amount ($1,250) above $455. 730 F.3d at 147-49. In addition to the predetermined $1,250, the plaintiff also received an hourly "premium pay" that varied each week based on the number of hours worked. *Id.* at 147. The plaintiff did not make the same amount of money each week. *Id.* But the court held that the significant amount of other compensation, in addition to the predetermined minimum amount of $1,250, did not violate the salary basis test, because the highly compensated employee exemption applied. The Second Circuit held:

> It is undisputed that, at all pertinent times, appellant's **base salary** substantially exceeded $455 per week and there were no impermissible

deductions. There is also no dispute that the appellant's base weekly salary was guaranteed, i.e. to be paid regardless of the number of hours appellant actually worked in a given forty-four-hour shift. The requirements of C.F.R. § 541.600 and 541.602 are thus satisfied with regard to the minimum guaranteed weekly amount being paid "on a salary basis."

*Id.* at 148.

The First Circuit also followed this analysis. In *Litz*, the employee was paid a predetermined amount each week ($1,000) that exceeded $455. 772 F.3d at 2. The employee also received $40-$60 in hourly pay based on hours worked per week in addition to the $1,000 predetermined amount. *Id.* The First Circuit concluded that the employee was paid on a salary basis and was exempt as a highly compensated employee. *Id.* at 3-4. The court focused on the "all or part" language, allowing the predetermined pay, if over $455 a week, to meet the exemption, even though the employee received $40-$60 in hourly pay based on hours worked in addition to the $1,000 predetermined amount. *Id*.

The Sixth Circuit addressed a slightly different factual scenario because the predetermined daily rate was $337. *Hughes*, 878 F.3d at 189. Because the predetermined daily rate of $337 fell below the $455 minimum, *Hughes* determined that a fact issue existed on whether the plaintiff received a predetermined amount above $455. It was this fact that *Hughes* concluded distinguished it from *Anani* and *Litz*. *Id.* at 189-190 ("*Anani* and *Litz* involved plaintiffs who … unlike [plaintiffs] here, were undisputedly weekly base salaries above the qualifying level."). Thus,

because prong one (a predetermined amount above $455 which constituted all or part of the weekly compensation) was disputed, the employer could not take advantage of the relaxed benefit of prong two (that the employee earned more than $100,000 annually.) *See id*.

The Panel's opinion directly conflicts with the decisions of those three Circuit Courts. The Panel concluded that, to meet section 541.602(a)'s salary basis requirements of a "'predetermined amount' calculated on a 'weekly, or less frequent' pay period" a highly compensated employee must "receive a constant fraction of his annual compensation … for each biweekly pay period." *Hewitt*, 956 F.3d at 344. The Panel's reasoning focuses on the ***total*** amount paid weekly, not whether there was a predetermined minimum amount that constituted "all or part of" Hewitt's compensation for any week he worked—the opposite of how the First, Second and Sixth Circuits answered the question.

The Panel uses the example of an employee paid on an annual salary.[1] "That employee can easily determine what he will receive every two weeks before he

_____

[1] To the extent the Panel indicates that an employee's earnings can never be computed on a daily basis without violating the salary basis test, that argument conflicts with section 541.604(b), which specifically allows that practice. Section 541.604(a) also allows additional compensation above the minimum salary amount without violating the salary basis test. The prior decisions from this Court on the salary basis issue have focused primarily on whether improper deductions were made from the salary. *See, e.g., York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991). That is not an issue here.

works—just divide his annual salary by twenty-six. He is thus 'paid on a salary basis.'" *Id*. at 343. The Panel states that Hewitt did "not receive a constant fraction of his annual compensation—akin to 1/26th amount mentioned above—for each biweekly pay period. Rather, he had to take the number of days he worked (past tense) and multiple by the operative daily rate to determine how much earned. So Hewitt knew his pay only after he worked through the pay period." *Id*. at 344.[2] The Panel then concludes that "[a]s a result, he did not receive a 'predetermined amount' 'on a weekly, or less frequent basis'—rather, he received an amount contingent on the number of days he worked each week. So he was not paid on a 'salary basis' under the Labor Department regulations." *Id*.

But this holding, which focuses on whether Hewitt knew beforehand the final amount received at the end of the pay period, effectively eliminates the statutory text "all ***or part of***." The salary basis regulation requires that a "predetermined amount constituting all ***or part of*** the employee's compensation" must be paid weekly or on a less frequent basis." Here, Hewitt was paid a predetermined minimum of $963 each week he worked, which was "all ***or part of***" the total compensation that Helix paid him every two weeks. The Panel's requirement of absolute certainty in the total

---

[2] In support, the Panel cited a DOL Opinion Letter that pre-dated the highly compensated employee exemption and accordingly did not discuss that regulation. *Id*. at 343.

amount of pay is not based in the regulation, which focuses rather on providing flexibility for reaching the $100,000 threshold. But certainty is provided by payment of a predetermined amount that is "all or part" of the employee's total pay. Otherwise, the "all or part" language is written out of the regulation. The fact that Hewitt's compensation per pay period was not a "constant fraction" known to him before the pay period is thus contrary to the statutory text.

The Panel's conclusion is also contrary to *Anani* where the plaintiff only knew the predetermined, minimum amount of $1,250 in any week he worked. The *Anani* plaintiff did not know his total pay before the pay period, because his total pay would depend on how much additional premium pay he received. *Anani*, 730 F.3d at 147-48. It is also contrary to *Litz* where the plaintiffs knew only their predetermined amount of $1,000 for any week they worked. The *Litz* plaintiffs did not know their total pay before the pay period, because that total would depend on how much additional compensation they received based on hours worked. *Litz*, 772 F.3d at 2. Likewise, *Hughes* agreed with *Anani* and *Litz* on the interpretation of the regulation, but due to a fact issue regarding whether the predetermined amount exceeded $455, it could not reach the issue as a matter of law. *Hughes*, 878 F.3d at 189-90.

It is undisputed that Helix paid Hewitt a predetermined sum above $455 that constituted "all or part of" his compensation paid biweekly. In fact, Hewitt's predetermined daily rate of $963 was nearly twice the $455 weekly requirement. To

require that the total weekly amount be "known" beforehand would render the highly compensated employee exemption meaningless and change the statutory text of §602(a).[3]

### C. The Panel's Decision Also Conflicts With the First and Second Circuits on the Application of the "Reasonable Relationship" Test

Another conflict exists between the Panel's opinion and the *Anani* and *Litz* opinions. Contrary to those two cases, the Panel concludes that the "reasonable relationship" provision in section 541.604(b) applies to the highly compensated employee exemption. *Hewitt*, 956 at 344 n.4. Section 541.604(b) provides that a salary may be calculated on a daily basis, if the employee is guaranteed $455 each week paid on a salary basis and if there is "a reasonable relationship" between the amount guaranteed and the amount earned. 29 C.F.R. §541.604(b).

In *Anani*, the plaintiff was paid a base amount of $1,250 each week and additional pay if he worked extra shifts, resulting in annual pay exceeding $100,000. *Anani*, 730 F.3d at 147. This extra pay was significant, resulting in a ratio of about 2:1 for total earnings compared to his base pay. *Id.* at 149. The plaintiff claimed

---

[3] The Panel incorrectly states that Hewitt was not paid his "full salary for any week in which the employee performs any work without regard to the number of days worked" under §541.602(a)(1). *Hewitt*, 956 at 344. That requirement is satisfied because Hewitt was paid a salary pursuant to §541.602(a)—a predetermined amount that constituted all or part of his compensation—and he received at least that predetermined amount ($963) regardless of the days or hours he worked.

that this ratio exceeded the "reasonable relationship" provision in section 541.604(b). *Id*. *Anani* rejected this argument, explaining that the reasonable relationship test does not apply to highly compensated employees:

> We perceive no cogent reason why the requirements of C.F.R. §541.604 must be met by an employee meeting the requirements of C.F.R. §541.601 [highly compensated employee exemption]. Indeed, C.F.R. §541.601 is rendered essentially meaningless if a "highly compensated employee" must also qualify for the exemption under C.F.R. §541.604 or, to state the converse, would lose the "highly compensated employee" exemption by failing to qualify under C.F.R. §541.604.

*Id*. at 149. The First Circuit, the only other Circuit Court to reach this issue, followed *Anani*. *Litz*, 772 F.3d at 5 (explaining that the plaintiffs "sensibly abandoned" the argument that the reasonable relation test "applies to highly compensated employees").

The Panel's opinion specifically conflicts with these holdings, stating that §541.604 does not apply because neither the salary basis requirement nor the reasonable relationship requirements are met. *Hewitt*, 956 F.3d at 344 n.4. Furthermore, by focusing on Hewitt's total weekly compensation, the Panel is effectively requiring a reasonable relationship to exist between the guaranteed daily rate and the total weekly compensation. This result directly conflicts with *Anani* and *Litz*. *Id*. at 4.

## II.   The Panel's Decision Recognizes That it Is Contrary to a Now Withdrawn Fifth Circuit Decision

Another Fifth Circuit Panel reached this precise issue and ruled contrary to this Panel. *Faludi v. U.S. Shale Solutions*, 936 F.3d 215 (5th Cir. 2019), *withdrawn by Faludi v. U.S Shale Solutions*, 950 F.3d 269 (5th Cir. 2020). In the original *Faludi* opinion, the Panel concluded that, because Faludi was paid a daily rate of $1,000 for every day he worked, he "regularly received a predetermined amount of compensation on a weekly or less frequent basis in accordance with 29 C.F.R. §541.602(a)." *Id.* at 219-20. *Faludi* also held that the reasonable relationship test in §541.604(b) "does not apply to employees who meet the highly compensated employee exemption." *Id*. at 220. Thus, the original *Faludi* decision was completely consistent with *Anani*, *Litz* and *Hughes*. The substituted *Faludi* decision, rendered on an unrelated issue, acknowledged that "U.S. Shale's arguments [which the Panel had adopted in the first opinion] are well taken as to why Faludi fits within the highly compensated employee exemption to the FLSA, [but] we need not reach that issue given Faludi is an independent contractor not covered by the FLSA's requirements." *Faludi*, 950 F.3d at 275.

## CONCLUSION

Appellees ask that the Court affirm the judgment of the trial court.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By: _____/s/ M. Carter Crow_____
 M. Carter Crow
 Texas Bar No. 05156500
 carter.crow@nortonrosefulbright.com
 Katherine D. Mackillop
 Texas Bar No. 10288450
 katherine.mackillop@nortonrosefulbright.com
 Kimberly F. Cheeseman
 Texas Bar No. 24082809
 kimberly.cheeseman@nortonrosefulbright.com
 1301 McKinney, Suite 5100
 Houston, Texas 77010-3095
 Telephone: (713) 651-5151
 Facsimile: (713) 651-5246

 *Counsel for Defendants/Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2020, Appellees served a copy of this Brief by electronic service (via PACER/ECF) on the following counsel of record:

Mr. Edwin Sullivan
ed@osattorneys.com
Oberti Sullivan LLP
712 Main Street, Suite 900
Houston, TX 77002
**VIA ECF**
*Counsel for Plaintiff/Appellant*

_____/s/ M. Carter Crow_____
M. Carter Crow, Attorney for Appellees

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A), because excluding the words that need not be counted under Fed. R. App. P. 32(f) and Fifth Cir. R. 32.2, this brief contains 3,858 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2013 in Times New Roman 14-point font.

                        /s/ M. Carter Crow
                        M. Carter Crow
                        Attorney for Appellees

Dated: May 18, 2020

# EXHIBIT A

956 F.3d 341
United States Court of Appeals, Fifth Circuit.

Michael J. HEWITT, Plaintiff - Appellant

v.

HELIX ENERGY SOLUTIONS GROUP,
INCORPORATED; Helix Well Ops,
Incorporated, Defendants - Appellees

No. 19-20023
|
FILED April 20, 2020

**Synopsis**

**Background:** Oil rig worker brought action against oil and gas services company alleging violations of Fair Labor Standards Act's (FLSA) overtime provision. The United States District Court for the Southern District of Texas, Kenneth M. Hoyt, Senior District Judge, 2018 WL 6725267, entered summary judgment in company's favor, and worker appealed.

The Court of Appeals, Ho, Circuit Judge, held that worker was not exempt from FLSA's overtime requirement.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

 ***342** Appeal from the United States District Court for the Southern District of Texas, Kenneth M. Hoyt, U.S. District Judge.

**Attorneys and Law Firms**

Edwin Sullivan, Esq., Oberti Sullivan, L.L.P., Houston, TX, for Plaintiff-Appellant.

Michael Carter Crow, Kimberly Frances Cheeseman, Katherine D. Mackillop, Esq., Jesika Jasmine Silva Blanco, Norton Rose Fulbright US, L.L.P., Houston, TX, for Defendant-Appellee Helix Energy Solutions Group, Incorporated.

Michael Carter Crow, Kimberly Frances Cheeseman, Katherine D. Mackillop, Esq., Norton Rose Fulbright US,

L.L.P., Houston, TX, for Defendant-Appellee Helix Well Ops, Incorporated.

Before WIENER, HIGGINSON, and HO, Circuit Judges.

**Opinion**

JAMES C. HO, Circuit Judge:

A panel of this court recently divided over the proper interpretation of a Labor Department regulation issued under the Fair Labor Standards Act (FLSA). *See Faludi v. U.S. Shale Sols.*, 936 F.3d 215 (5th Cir. 2019), *opinion withdrawn*, 950 F.3d 269 (5th Cir. 2020). Today we revisit the issue initially raised, but ultimately left undecided, in *Faludi*.

The regulation in question defines what it means for an employee to be compensated on a "salary basis"—a requirement that must be met for an employer to qualify for certain exemptions under the FLSA. As the regulation makes clear, an employee is paid on a "salary basis" if he "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount"—and if that salary is paid "without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a), (a)(1).

Based on those provisions, the dissent in *Faludi* concluded that an employee is *not* paid on a salary basis—and therefore *is* entitled to the protections of the FLSA—if the employee is paid a daily, rather than weekly, rate. *See* 936 F.3d at 222 (Ho, J., dissenting). The majority initially disagreed. *Id.* at 220. But after the employee in *Faludi* filed a petition for rehearing en banc, the panel majority withdrew its earlier opinion and decided the case on other grounds. *See Faludi v. U.S. Shale Sols.*, 950 F.3d 269, 271 (5th Cir. 2020).

The case we decide today presents the same interpretive question that divided our court in *Faludi*. We hold, consistent with the dissent in *Faludi*, that an employee who is paid a daily rate is not paid on a "salary basis" under 29 C.F.R. § 541.602(a). Accordingly, we reverse the district court and remand for further proceedings.

## I.

Michael Hewitt was an employee of Helix for over two years, working as a Tool Pusher. In that position, Hewitt managed other employees while on a "hitch"—that is, while working offshore on an oil rig. Each hitch lasted about a month. Helix

paid Hewitt a set amount for each day that he worked. Hewitt received his paycheck biweekly.

Hewitt worked more than forty hours a week. So under the FLSA, he would ordinarily be entitled to overtime unless he was an exempt employee. 29 U.S.C. §§ 207(a)(1), 213(a)(1).

And that is what Helix contends, arguing that Hewitt is either an exempt executive or highly compensated employee. *See* **\*343** 29 C.F.R. § 541.100 (executive employees); § 541.601 (highly compensated employees).

Both of those exemptions require the employer to meet both a duties test and a salary test. The salary test, in turn, has two components—first, the employer must pay the employee a minimum per-week rate, and second, the employer must pay the employee on a "salary basis." *Id.*

Hewitt contends that Helix did not pay him on a "salary basis" because it calculated his pay based on a daily, rather than weekly, rate. Helix responds that Hewitt's daily rate was greater than the weekly salary requirement under Labor Department regulations. Accordingly, Helix argues, so long as Hewitt worked at least a single day during any particular week, he would receive more than the weekly salary requirement, and was therefore paid on a "salary basis" under Labor Department regulations.

The district court agreed with Helix and granted summary judgment to the company on the ground that Hewitt is exempt as either an executive or highly compensated employee. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 2018 WL 6725267, at *4 (S.D. Tex. Dec. 21, 2018). Hewitt appealed.

The primary question presented on appeal is purely a matter of legal interpretation. As such, review is de novo. *See 21st Mortg. Corp. v. Glenn (In re Glenn)*, 900 F.3d 187, 189 (5th Cir. 2018). For the reasons we explain below, we reverse.

## II.

At the heart of this appeal is the proper interpretation of the following Labor Department regulation:

> An employee will be considered to be paid on a 'salary basis' within the meaning of this part

if the employee *regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount* constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a) (emphasis added).

Broadly speaking, then, § 541.602(a) requires that an employee receive for each pay period a "predetermined amount" calculated on a "weekly, or less frequent" pay period. To put it plainly: The salary basis test requires that an employee know the amount of his compensation for each weekly (or less frequent) pay period during which he works, *before* he works. [1]

[1] Subsection (b) does allow employers to deduct, and thus, vary, employees' pay while still paying them on a salary basis. That subsection is not at issue in this case.

An example helps: Consider an employee with an employment contract providing an annual salary to be paid biweekly. That employee can easily determine what he will receive every two weeks before he works—just divide his annual salary by twenty-six. He is thus "paid on a 'salary basis.' " *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (July 9, 2003) (reviewing a pay system guaranteeing that employees "will be paid at least 1/26th of their annual salary every other week"). [2]

[2] To be sure, that is an approximation—there are 52 weeks *plus one day* in a 365-day year. So technically, the annually-salaried employee will receive slightly less than 1/26th of the annual salary per biweekly paycheck. But the point is the same—that employee can count on receiving at least that predetermined amount for each biweekly paycheck. *See also*, *e.g.*, *Escribano v. Travis County*, 947 F.3d 265, 267 (5th Cir. 2020) (" 'Salary basis' ... generally means what its label suggests: an employee is paid on a salary basis if he or she receives the same wage each pay period."); *Hughes v. Gulf Interstate Field Servs.*,

*Inc.*, 878 F.3d 183, 189 (6th Cir. 2017) (noting that an annual salary meets the salary basis test); *id.* at 193 n.7 (comparing payment on a salary basis to an employment contract with a set compensation); *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1184 (10th Cir. 2005) ("[T]he natural reading of ['predetermined amount'] is that it refers to the amount previously agreed on for the period for which the salary is to be paid.").

**\*344** Now consider Hewitt. He was paid biweekly. But he did not receive a constant fraction of his annual compensation—akin to the 1/26th amount mentioned above—for each biweekly pay period. Rather, he had to take the number of days he worked (past tense) and multiply by the operative daily rate to determine how much he earned. So Hewitt knew his pay only *after* he worked through the pay period.

As a result, he did *not* receive a "predetermined amount" "on a weekly, or less frequent basis"—rather, he received an amount contingent on the number of days he worked each week. So he was not paid on a "salary basis" under Labor Department regulations. *See*, *e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 189 (6th Cir. 2017) (calculating compensation based on a per-day amount meant that "it was very much disputed whether what [the employees] received weekly was in fact guaranteed"); *cf. Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 148 (2d Cir. 2013) (noting that an employee's salary was "guaranteed" when it was "paid regardless of the number of hours appellant actually worked in a given forty-four-hour shift").[3]

[3]   If Hewitt and Helix agreed beforehand on the length of each hitch, there could be an argument that Hewitt's salary was "predetermined." *See*, *e.g.*, *Thomas v. County of Fairfax*, 803 F. Supp. 1142, 1149 n.15 (E.D. Va. 1992). Helix did not make that argument to the district court, and only mentions that point here in passing, burying it in a paragraph discussing § 541.604(b). So we will not consider the argument. *See*, *e.g.*, *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived."); *Brinkmann v. Dall. Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) ("We will not raise and discuss legal issues that [a party] failed to assert.").

Any doubt that this is a proper reading of § 541.602(a) is put fully to rest by looking at § 541.602(a)(1). That section

provides as follows: "[A]n exempt employee must receive the *full* salary for any week in which the employee performs any work *without regard to the number of days or hours worked*." 29 C.F.R. § 541.602(a)(1) (emphases added).

Hewitt's pay cannot be squared with this provision. He was paid on a daily rate—so he was paid "*with*" (not "without") "regard to the number of days or hours worked," in direct conflict with the plain language of § 541.602(a)(1). So § 541.602(a)(1) confirms that Hewitt was not paid on a salary basis.[4]

[4]   The parties also discuss whether Helix meets the alternative requirements of 29 C.F.R. § 541.604(b), which governs employment compensation based on minimum weekly guarantee in addition to hourly or daily rates. As § 541.604(b) provides, an employer may "compute[ an employee's earnings] on an hourly, a daily or a shift basis," while still satisfying "the salary basis requirement," so long as "the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis"— that is, paid according to § 541.602. 29 C.F.R. § 541.604(b). Two problems here: As explained above, Helix did not pay Hewitt on a salary basis, as § 541.604(b) expressly requires. Moreover, § 541.604(b) requires that there be "a reasonable relationship ... between the guaranteed amount and the amount actually earned." Helix does not even attempt to claim that it meets that requirement, instead saying that the test does not apply.

\* \* \*

We reverse the grant of summary judgment to Helix and remand for proceedings **\*345** consistent with this opinion.[5]

[5]   Hewitt also asks for liquidated damages. *See* 29 U.S.C. § 216(b). But the district court decided this case on summary judgment. Issues relating to liability, including whether liquidated damages are appropriate, *see, for example*, *Lowe v. Southmark Corp.*, 998 F.2d 335, 337 (5th Cir. 1993), are best left to the district court in the first instance.

**All Citations**

956 F.3d 341, 2020 Wage & Hour Cas.2d (BNA) 145,596

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.